b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

DAVID B. FRICK,                    CIVIL DOCKET NO. 1:19-CV-00860
Appellant

VERSUS                             DISTRICT JUDGE DRELL

NANCY A. BERRYHILL,[1]
Appellee                           MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

David B. Frick ("Frick") appeals the denial of his claims for Social Security benefits. Because substantial evidence supports the Commissioner's decision that Frick was not disabled by his impairments from April 8, 2016 through December 15, 2017, Frick's appeal should be DENIED.

## I.    Background

### A.    Procedural Background

Frick filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging a disability onset date of April 8, 2016. ECF No. 7-1 at 211, 213. Frick contended he is disabled due to a compression[2] fracture of his spine at T-12. ECF No. 7-1 at 251. Those claims were initially denied by the Social Security Administration ("SSA"). ECF No. 7-1 at 117, 122.

---

[1] Dr. Kilolo Kijakazi is the current Acting Commissioner of Social Security.

[2] Although Frick refers to the fracture as a "compound" fracture, his medical records show it was a compression fracture.

A *de novo* hearing was held before an Administrative Law Judge ("ALJ"). ECF No. 7-1 at 52. Frick appeared with his attorney, a witness, and a vocational expert. ECF No. 7-1 at 52. The ALJ found that Frick suffers from severe impairments of degenerative disc disease, residual effects of a compression fracture at T12, and multiple sclerosis ("MS"). ECF No. 7-1 at 22. The ALJ concluded that Frick has the residual functional capacity to perform light work except: not more than occasional pushing and pulling of foot and hand controls bilaterally; not more than occasional climbing of ramps and stairs; no climbing cladders, ropes and scaffolds; not more than occasional balancing and stooping; no kneeling, crawling or crouching; limited to communicating only simple information orally; no working at unprotected eights or around moving mechanical parts; and no operating of a motor vehicle. ECF No. 7-1 at 24.

The ALJ further found, although Frick cannot perform his past relevant work, he can do light work that exists in significant numbers in the national economy, such as: house cleaner (light, unskilled, SVP-2, 176,135 jobs existing nationally and 2,876 jobs locally); bagger (light, unskilled, SVP-2, 111,442 jobs existing nationally and 5135 jobs locally); and produce weigher (light unskilled, SVP-1, 21,109 jobs existing nationally and 235 jobs locally). ECF No. 7-1 at 29. The ALJ concluded that Frick was not disabled at any time through the date of her decision on December 15, 2017. ECF No. 7-1 at 30.

Frick requested a review of the ALJ's decision.  The Appeals Council found that Frick has severe impairments of degenerative disc disease, compression fracture at T12, and MS, the combination of which cause the following limitations in his ability to perform the full range of sedentary work: he can only occasionally push/pull with foot and hand controls bilaterally; he can only occasionally climb ramps and stairs; he can never climb ladders, ropes and scaffolds; he can only occasionally balance and stoop; he can never kneel, crawl, or crouch; he can communicate only simple information orally; he can never work at unprotected heights or around moving mechanical parts; he cannot operate a motor vehicle; and he requires a one-handed assistive device for ambulation.  ECF No. 7-1 at 11-12.

The Appeals Council further found that Frick is unable to perform his past relevant work as a merchandise deliverer and an industrial cleaner.  ECF No. 7-1 at 12.  The Appeals Council found that, because Frick's impairments did not allow him to perform the full range of sedentary work, and because he was a literate, younger individual with a high school education, there were a significant number of jobs in the national economy that Frick could perform, such as lens block gauger (DOT[3] 716.687-030, 24,796 jobs nationally and 447 jobs in Louisiana),[4] and stone setter

---

[3] Dictionary of Occupational Titles.

[4] DOT 716.687-030 LENS-BLOCK GAUGER (optical goods) :
    Examines blocked lens to determine whether lens blanks are positioned evenly on block, using template. Positions template over blocked lens blank, holds assembly against light, and examines assembly to detect presence of light between blank and template indicating uneven positioning of lens blank on block.

(DOT 735.687-034, 18,329 jobs nationally and 607 jobs in Louisiana).[5]  ECF No. 7-1 at 11-12.  The Appeals Council concluded that Frick was not disabled at any time through the date of the ALJ's decision on December 15, 2017.  ECF No. 7-1 at 12.

The Appeals Council's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Frick filed this appeal for judicial review of the Commissioner's final decision, raising the following grounds for relief (ECF No. 8):

1.  The ALJ erred in finding that Frick's mental impairment was not severe, and the Appeals Council compounded that error by failing to review Frick's new and material evidence that was consistent with a finding of a severe mental impairment.

---

The DOT further indicated that a lens-block gauger requires: Strength-Sedentary; General Educational Development: Reasoning-level 2, Mathematical Development-level 1, Language Development-level 2; Specific Vocational Preparation: up to 2 months.

[5] DOT 735.687-034 STONE SETTER (jewelry-silver):
Sets ornamental stones, such as pearls, rhinestones, and colored glass in metal or plastic jewelry articles by one of following methods: (1) Brushes paste or applies cement across settings or depressions in article or deposits glue in settings with pick. Places stone in each setting, using tweezers or other pickup tool; (2) Places stone in setting and presses prongs around stone with hand tool; (3) Bores hole in setting, using hand drill. Inserts rivet in hole and hammers rivet ends flat. Positions stone in setting and presses rivet around stone with hand tools.  May paint decorations on article.  May be designated according to method of setting stones as Pronger (jewelry-silver.); Stone Gluer (jewelry-silver.); or according to type of stone set as Pearl Hand (jewelry-silver); Rhinestone Setter (jewelry-silver).
The DOT further indicated that a stone setter requires: Strength-Sedentary; General Educational Development: Reasoning-level 1, Mathematical Development-level 1, Language Development-level 1; Specific Vocational Preparation: up to 2 months.

Neither of these job descriptions has been updated in the DOT since 1977.

4

2. The SSA erred in failing to meet its Step 5 burden of proof and establish the existence of a significant number of jobs that Frick can perform.

**B.    Factual background.**

1. **Medical history.**

In April 2016, Frick was involved in a motor vehicle collision. Three days later, Frick was seen in the emergency department for complaints of moderate pain mid-back from a motor vehicle accident three days prior. ECF No. 7-1 at 336. An x-ray showed an anterior compression fracture of the T12 vertebra with loss of about 53% of height of the vertebral body anteriorly. ECF No. 7-1 at 337. Frick reported that T12 fracture occurred about ten years ago. ECF No. 7-1 at 336. Frick was diagnosed with chronic thoracic back pain associated with muscle strain caused by a motor vehicle accident. ECF No. 7-1 at 337. Frick was prescribed Robaxin for muscle spasms and Tramadol for pain. ECF No. 7-1 at 338.

About one week later, Frick complained of moderate, dull, aching neck and back pain, as well as chronic back pain, in the thoracic spine and cervical spine areas. ECF No. 7-1 at 328. Frick reported the motor vehicle accident ten days before was a rear-end collision at a high rate of speed. ECF No. 7-1 at 328. X-rays again showed an old T-12 compression fraction. ECF No. 7-1 at 329. Frick was diagnosed with acute traumatic back pain associated with muscle strain of the right trapezius at the shoulder, and was prescribed naproxen and Norflex for pain, warm

soaks to the affected area, limited lifting, and no strenuous activity.  ECF No. 7-1 at 329.

Frick stopped working in April 2016 and applied for social security benefits in May 2016.

In July 2016, Frick was given a mental examination by Jack L. Bentley, Jr., Ph.D., a psychologist, on referral from Disability Determinations Services.  ECF No. 7-1 at 351.  Dr. Bentley noted that Frick reported having suffered a fractured vertebrae at T12 in 2006 and experienced chronic pain and loss of mobility from that injury.  ECF No. 7-1 at 351.  Frick re-injured his back when he was in a second motor vehicle accident and was rear-ended by a large truck in April 2016.  ECF No. 7-1 at 351.  Frick reported significant limitations in his mobility as a result of these injuries; he could no longer twist his back, and his neck was injured.  ECF No. 7-1 at 351.  Frick said he was unable to bend to tie his shoes, and could not button a shirt.  ECF No. 7-1 at 351.

Dr. Bentley found that Frick's psychiatric symptoms included severe episodes of depression, mood swings, suicidal ideation, homicidal ideation, anxiety, panic attacks, crying spells, and rage.  ECF No. 7-1 at 351.  Frick also had a 15-year history of migraine headaches.  ECF NO. 7-1 at 351.  Frick said he had seen a psychiatrist on three occasions as a work requirement, but did not have any real desire to pursue psychiatric treatment.  ECF No. 7-1 at 351.  Frick did not report any hallucinations, paranoia, or unusual mentation.  ECF No. 7-1 at 351.  However,

Frick described himself as dyslexic.  ECF No. 7-1 at 351.  Frick never married or had children, but was living with a male partner.  ECF No. 7-1 at 351.

Dr. Bentley noted that Frick ambulated with a cane and appeared mildly ataxic in his gait, but did not appear to be in any distress.  ECF No. 7-1 at 352. Frick's communications skills were not limited and his memory was intact.  ECF No. 7-1 at 352.  Frick reported moderate to severe sleep disturbance.  ECF No. 7-1 at 352.

Dr. Bentley diagnosed Major Depressive Disorder, moderate to severe, and pain disorder due to multiple injuries.  ECF No. 7-1 at 352.  Dr. Bentley found Frick would have marked limitations in his ability to sustain complex or repetitive work-related activities for psychiatric reasons, but he was only mildly impaired for simple tasks and in his ability to communicate effectively with coworkers and supervisors. ECF No. 7-1 at 353.  Dr. Bentley found that most of Frick's work-related restrictions appeared to stem from his physical health problems rather from mental health problems.  ECF No. 7-1 at 353.

Dr. Robert Estock, a psychiatrist, filled out a psychiatric review technique assessment for Frick, after reviewing his medical records, in August 2016.  ECF No. 7-1 at 93.  Dr. Estock found that Frick suffers from an affective disorder that causes moderate restrictions in his activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  ECF No. 7-1 at 93.

7

Dr. Estock also filled out a Mental Residual Functional Capacity Assessment in August 2016. ECF No. 7-1 at 96. Dr. Estock found Frick has: moderate limitations in the ability to remember locations and work-like procedures; moderate limitations in the ability to understand and remember detailed instructions; moderate limitations in the ability to carry out detailed instructions; moderate limitations in the ability to maintain attention and concentration for extended periods, moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; moderate limitations in the ability to sustain an ordinary routine without special supervision; moderate limitations in the ability to work in coordination with or in proximity to others without being distracted by them; a moderate limitation in the ability to accept instruction and respond appropriately to criticism from supervisors; a moderate limitation in the ability to respond appropriately to changes in the work setting; and a moderate limitation in the ability to set realistic goals or make plans independently of others. ECF No. 7-1 at 97-98.

In January 2017, Frick was evaluated at Christus St. Frances Cabrini Hospital for overactive bladder, neurological deficit, low back pain, disturbance in speech, and auditory hallucinations. ECF No. 7-1 at 419-422. Frick was referred for tests. ECF No. 7-1 at 421.

In January 2017, Frick had a biopsychosocial assessment at Caring Choices in Pineville. ECF No. 7-1 at 363, 372. Frick reported he began hearing a male

voices at about age 10, but since the accident in which he broke his back, he began hearing another male voice and a female voice as well.  ECF No. 701 at 363, 372. Frick reported the female is protective and tells him to be careful and warns him about things; the male voice read him bedtime stories as a child.  ECF No. 7-1 at 363, 372.  Frick never told people about or sought help for the hallucinations.  ECF NO. 7-1 at 364, 373.  The voices stopped him from self-harm when he had suicidal thoughts with a plan to shoot himself several years ago.  ECF No. 7-1 at 365, 374. Frick denied any symptoms of schizophrenia other than auditory hallucinations. ECF No. 7-1 at 364, 373.

Frick was also found to have PTSD with flashbacks (from the motor vehicle accident that broke his back), panic attacks (when he is in a vehicle), the symptoms of a depressive disorder, difficulty sleeping, and irritability.  ECF No. 7-1 at 363-64, 372-73.  When he has a panic attack, Frick experiences chest pain or discomfort, dizziness, sweating, trembling and shortness of breath.  ECF No. 7-1 at 364, 373. Frick's depressive symptoms are loss of energy, decreased appetite, difficulty concentrating, irritability, isolation, and difficulty sleeping.  ECF No. 7-1 at 364, 373.  Frick reported back and neck pain from the two moving vehicle accidents. ECF No. 7-1 at 367-69, 376-78.

Frick was found to have a flat affect with psychotic or borderline psychotic symptoms.  ECF No. 7-1 at 369, 378.  Frick appeared to be experiencing auditory hallucinations at that time, but denied having suicidal thoughts.  ECF No. 7-1 at

369, 378.   Frick was diagnosed with: major depressive disorder, recurrent and severe, with psychotic symptoms; and an unspecified nonorganic psychosis.   ECF No. 7-1 at 370, 379.   Cognitive behavioral therapy was recommended.   ECF No. 7-1 at 371, 380.   Frick was prescribed Zyprexa.   ECF No. 7-1 at 381, 383, 390.

In January 2017, an MRI of Frick's brain showed "extensive white matter lesions."   ECF No. 7-1 at 431.   A subsequent CT scan of Frick's brain showed extensive white matter lesions that were "suspicious for multiple sclerosis."   ECF No. 7-1 at 432.

Also in January 2017, an MRI of Frick's lumbar spine showed an old compression fracture at T12 with kyphosis and mild central stenosis, and mild spondylitic changes without stenosis or nerve root impingement.   ECF No. 7-1 at 438-39.   An MRI of Frick's cervical spine showed multilevel degenerative disc disease, moderate to severe spinal canal stenosis at C5-6, and multi-level neural foraminal narrowing.   ECF NO. 7-1 at 436-37.   An MRI of Frick's thoracic spine showed a subacute compression deformity at T12 and minimal disc bulge at T5-6, T6-7, and T8-9.   ECF No. 7-1 at 440.

In February 2017, Frick had a psychological evaluation by Dr. Janet Johnson, a psychiatrist at Caring Choices.   ECF No. 7-1 at 384.   Frick said he completed the tenth grade and then obtained a GED.   ECF No. 7-1 at 386.   Frick reported: depression since his back was broken in an accident 11 years prior; auditory hallucinations (one male and one female, speaking from outside of his head); and a

10

diagnosis of MS one week prior.  ECF No. 7-1 at 384.  Frick also reported difficulty sleeping, sadness, decreased appetite, feelings of worthlessness, decreased sociability, and loss of energy, as well as bizarre thoughts, and mild paranoia.  ECF No. 7-1 at 384-85.  Frick reported was using marijuana once every two to three months.  ECF No. 7-1 at 385.  Frick was diagnosed with: major depressive disorder, recurrent, severe with psychotic symptoms; psychosis, cannabis use, unspecified, uncomplicated.  ECF No. 7-1 at 387.  Frick was prescribed Zyprexa and supportive therapy.  ECF No. 7-1 at 388.

Later in February 2017, Frick was noted to be compliant with his medication. ECF No. 7-1 at 395.  Frick did not report or display any signs of hallucinations, depression, or anxiety.  ECF No. 7-1 at 395-96.  Frick's diagnosis was unchanged. ECF No. 396-97.  Frick's outpatient treatment was continued because he continued to exhibit symptoms of a mental/emotional disorder that interferes with day-to-day functioning and adversely affects his relationships.  ECF No. 7-1 at 397.  Frick continued to need counseling and medication management.  ECF No. 7-1 at 397.

In March 2017, Dr. Ariel O. Antezana, a neurologist, examined Frick for possible MS.  ECF No. 7-1 at 359.  Dr. Antezana diagnosed MS, with: a moderately severe, constant loss of motor skills (worse in the evening); weakness; vision changes; ataxia; tinnitus; muscle spasms in both legs; generalized pain; fatigue; tremors; dysarthria; memory lapses or loss; dizziness; decreased frequency of bowel movements; slurred speech; and difficulty swallowing.  ECF No. 7-1 at 360.  Frick

11

reported that he started having difficulties walking in 2014 and began using a cane then; in 2015 he began having dysarthria (slurred or slow speech) and had worsening difficulties walking; and in 2016 his dysarthria worsened.  ECF No 7-1 at 360.    Dr. Antezana prescribed Vitamin D2 and baclofen, in addition to Copaxone (an immunosuppressant that Frick had just started taking), and ordered further testing.  ECF No. 7-1 at 361.

Later in March 2017, Frick reported to Dr. Jose Pena, a psychiatrist, that he continued to have: auditory hallucinations that usually gave cautionary advice; irritability; and episodic anger.  ECF No. 7-1 at 402.  Frick's diagnoses remained unchanged and his Zyprexa was increased.  ECF No. 7-1 at 402-403.

In April 2017, Frick's impulsive behaviors were displayed less frequently and he had only an occasional problem with controlling his anger.  ECF No. 7-1 at 404.  Frick's risk of violence was considered absent or very low.  ECF No. 7-1 at 405.  Frick's medication and counseling were continued.  ECF No. 7-1 at 406.

Also in April 2017, Frick's drug test results for four months showed no alcohol use and no drug use other than marijuana.  Frick's tests indicated an increase in marijuana use in February, March, and April 2017.  ECF No. 7-1 at 410, 414.

In May 2017, Frick went to the emergency room for palpitations and left arm pain, and was diagnosed with palpitations.  ECF No. 7-1 at 442, 445.

In June 2017, Frick complained of weakness, muscle spasms, numbness, and paresthesia of the skin (tingling) in his upper and lower extremities.  ECF No. 7-1 at 496, 500.  Frick had gross motor impairment.  ECF NO. 7-1 at 500.  A motor nerve conduction study, a sensory nerve conduction study, and an EMG of Frick's lower extremities were all normal.  ECF No. 7-1 at 497.  Dr. Antezana found no evidence of neuropathy, radiculopathy, or myopathy.  ECF No. 7-1 at 497.  However, Frick had spasticity and decreased strength in his lower extremities.  ECF No. 7-1 at 500.  Frick was prescribed Ocrelizumab (an immunosuppressant).  ECF No. 7-1 at 500.

Also in June 2017, at Christus Cabrini/Incarnate Work, Frick complained of palpitations (caused by the Copaxone injections for his MS), joint pain, low back pain radiating down his legs and arms, numbness to the lower extremities, and generalized weakness and fatigue.  ECF NO. 7-1 at 509.  Frick had MS and walked with canes.  ECF NO. 7-1 at 509.  Frick was diagnosed with: neurological deficit; kyphosis (spinal deformity); and bilateral sciatica.   ECF NO. 7-1 at 509.

In August 2018, Frick complained at the Christus Community Clinic of thoracic and low back pain, insomnia, auditory hallucinations, insomnia, deteriorating sight, overactive bladder, neurological deficit, abnormal weight loss, speech disturbance, dysphagia, and urinary incontinence.  ECF NO. 7-1 at 46-47  Frick also reported that he had a tenth grade education, was unemployed, is homosexual, walks with an assistive device, has smoked tobacco since age 16, and

13

currently smokes one pack per day.  ECF No. 7-1 at 47-48.  Frick's medical history showed he had broken his back in 2005 (T-12 compound fracture), and was diagnosed with MS in January 2017.  ECF No. 7-1 at 48.  Frick had a humped back and red spots on his facial skin.  ECF No. 7-1 at 48.  Frick's gait was weak and unsteady and he used a walker.  ECF No. 7-1 at 48.  Frick was diagnosed with sciatica, low back pain, anxiety, primary erectile dysfunction, persistent insomnia, vitamin D deficiency, auditory hallucinations (olanzapine was prescribed), and found to engage in high-risk unprotected sexual behavior.  ECF No. 7-1 at 48-49.  Frick tested positive for HIV 1.  ECF No. 7-1 at 50-51.

In November 2018, Frick had an MRI of his cervical spine.  ECF No. 7-1 at 39.  The MRI showed that Frick has possible plaque within the lower pons, but no cervical cord lesions.  ECF No. 7-1 at 40.  Frick has multilevel degenerative changes, severe spinal canal stenosis at C5-6, moderate spinal canal stenosis at C3-4, C4-5 and C6-7, and multilevel foraminal narrowing.  ECF No. 7-1 at 40.

Also in November 2018, an MRI of Frick's brain showed a stable appearance to his MS.  ECF No. 7-1 at 41.

In February 2019, Frick was evaluated at the Neuro Medical Clinic of Cenla, L.L.C., for complaints of severe back pain, occasional numbness in his legs, and problems with his knees.  ECF No. 7-1 at 37.  Frick was using a walker to assist with ambulation and was taking baclofen and cyclobenzaprine.  ECF No. 7-1 at 37.  Frick was 6'2" tall and weighed 236 pounds.  ECF No. 7-1 at 37.  Frick was found to

14

have severe spinal stenosis at C5-6, HIV I disease, and primary progressive MS (moderate BOD [burden of disease]).  ECF No. 7-1 at 38.  The HIV diagnosis contra-indicated the use of immunosuppressants to treat his MS.  ECF No. 7-1 at 38.

### 2.  Administrative Hearing.

At the August 2017 administrative hearing, Frick was 39 years old.  ECF No. 7-1 at 57.  Frick had a tenth grade education and a GED.  ECF No. 7-1 at 75.

Frick testified that he worked at the Shreveport Flower Market as a "gofer" in 2003.  ECF No. 7-1 at 57-58.  The heaviest weight he lifted was over 30 pounds.  ECF No. 7-1 at 58.  Frick worked at Spencer Companies (a flower wholesale business) from 2013 to 2016 in delivery and janitorial.  ECF No. 7-1 at 58, 229.  Frick was on his feet most of the time, and had to lift over 30 pounds.  ECF No. 7-1 at 58.  Frick has not worked since April 8, 2016.  ECF No. 7-1 at 59.  Frick's family supports him.  ECF NO. 7-1 at 59.  Frick has lived with his sister since he moved from Alabama to Louisiana in October 2016.  ECF No. 7-1 at 60.

Frick testified that he was diagnosed with MS in early 2017.  ECF No. 7-1 at 59.  Frick stopped working in 2016 due to fatigue, loss of motor skills, and occasional numbness in his legs.  ECF No. 7-1 at 59-60.  Frick testified that he waited until January 2017 to get treatment because he did not have any health insurance.  ECF No. 7-1 at 60.

Frick testified that he uses a cane to ambulate.  ECF No. 7-1 at 60.  Frick's neurologist is Dr. Antezana.  ECF No. 7-1 at 60.  Dr. Antezana told Frick that he

would have to use a walker soon because the cane would be inadequate.  ECF No. 7-1 at 61.  Frick testified he had fallen 5 or 6 times already by August 2017, despite using a cane.  ECF No. 7-1 at 61.  Frick uses the cane at all times.  ECF No. 7-1 at 61.

Frick testified that he could stand for less than 30 minutes, walk less than 30 minutes, sit less than 30 minutes, and lie down for less than 30 minutes.  ECF No. 7-1 at 61.  Frick testified that sitting too long causes back pain.  ECF No. 7-1 at 61.

Frick testified that fatigue is a problem and he has to rest during the day.  ECF NO. 7-1 at 62.  Frick's speech is somewhat slurred by his MS.  ECF No. 7-1 at 62.

Frick's hands have been affected by MS for about two years.  ECF No. 7-1 at 63.  Frick is right-handed.  ECF No. 7-1 at 63.  Frick testified that, in April 2016, when he worked as a cashier, he had difficulty holding onto loose change.  ECF No. 7-1 at 63.  Frick cannot open a jar lid and has difficulty holding onto a coffee cup.  ECF No. 7-1 at 63.  Frick testified that he does not drive anymore because his reaction time has gotten bad.  ECF No. 7-1 ay 64.

Frick testified that he used to weigh about 480 pounds, but he intentionally lost weight.  ECF NO. 7-1 at 74.  When he was in the motor vehicle accident and suffered a compression fracture of his back, he was too heavy to have surgery.  ECF No. 7-1 at 70.  The surgery has not been recommended again since he lost weight.  ECF No. 7-1 at 70.

16

Frick also suffers from bladder spasms.  ECF No. 7-1 at 70.  Frick stopped taking medication for that because of the medication side effects.  ECF No. 7-1 at 71.  Frick still has bladder problems and always has to know where a bathroom is located.  ECF No. 7-1 at 71.

Frick testified that, during the day, he does not do household chores or yard work due to back pain.  ECF No. 64.  Frick's back hurts in the middle area.  ECF No. 7-1 at 65.  Frick was hit by an 18-wheeled truck and suffered a compression fracture at the T-12.  ECF No. 7-1 at 65.  His back pain interferes with his ability to sit.  ECF No. 7-1 at 65.

Frick testified that his memory is bad.  ECF NO. 7-1 at 65.  Frick uses an alarm on his phone to remind him to take his medications.  ECF No. 7-1 at 65.  Frick's sister keeps up with his doctor appointments and makes sure he gets to them.  ECF No. 7-1 at 65.

Frick testified that his short-term memory is impaired–he cannot remember watching a movie three days later.  ECF No. 7-1 at 67.  Frick cannot concentrate for more than about ten minutes.  ECF No. 7-1 at 66.  Frick is not able to concentrate long enough to read.  ECF No. 7-1 at 70.

Frick had positive drug screens for marijuana in early 2017, which he said were due to depression and not habitual.  ECF NO. 7-1 at 71.  Frick testified that he might smoke marijuana once every two months.  ECF No. 7-1 ay 72.  Frick testified that he does not have a substance abuse disorder.  ECF No. 7-1 at 72.

Frick used to enjoy hiking, bowling, and skating, but he cannot do any of those things anymore. ECF No. 7-1 at 66. Frick also paints pictures, but has to put surgical tape around his brushes to help him grip them. ECF No. 7-1 at 66.

Frick suffered from depression before he was diagnosed with MS, but his depression has worsened. ECF No. 7-1 at 67. Frick has difficulty problem sleeping at night, his temper has worsened, and he has crying spells at least twice a day (when he wakes and when he goes to bed). ECF No. 7-1 at 67-68. Frick does not bathe or change clothes for several days at a time. ECF No. 7-1 ay 68. Frick said he needs assistance getting in and out of the tub (he has an extra rail) and has to use a chair in the shower. ECF No. 7-1 at 69.

Frick testified that, during the day, he watches TV and takes naps, nodding off several times per day. ECF No. 7-1 at 69. Frick has difficulty climbing up and down stairs. ECF No. 7-1 at 69. He gets disoriented if he tries to turn around on the staircase. ECF No. 7-1 at 70.

The VE testified that Frick worked as a "merchandise deliverer" at the Shreveport Flower Market, DOT 299.477-010, medium level work, unskilled, SVP 2. ECF No. 7-1 at 74. The VE testified that Frick worked as an industrial cleaner at the Spencer Company, DOT 381.687-018, medium level work, unskilled, SVP 2. ECF NO. 7-1 at 74.

The ALJ posed a first hypothetical involving a younger individual with a high school education and Frick's past work experience, who is able to do light work with

limitations: can only occasionally push/pull hand controls bilaterally; can only occasionally climb ramps and stairs/; can never climb ladders, ropes or scaffolds; can only occasionally balance and stoop; can never kneel, crouch, or crawl; limited to communicating only simple information orally; cannot work at unprotected heights or around moving mechanical parts; and cannot operate a motor vehicle. ECF No. 7-1 at 76.

In response to the first hypothetical, the VE testified that such a person could not do Frick's past relevant work. ECF No. 7-1 at 76. The VE further testified that such a person could work as: a housekeeping cleaner (DOT 323.687-014, light work, SVP 2, 176,134 jobs existing in the national economy and 2,876 in the regional economy); a bagger in the garment industry (DOT 920.687-018, light work, unskilled, SVP 1, 111,422 jobs in the national economy and 515 jobs in the regional economy); or a produce weigher (DOT 299.537-010, light work, unskilled, SVP 1, 21,109 jobs existing in the national economy and 235 in the regional economy). ECF No. 7-1 at 76-77.

The ALJ posed a second hypothetical involving the same individual except the person could only perform sedentary work. ECF No. 7-1 at 78. The VE testified that such a person could not do Frick's past relevant work, but could work as: a final assembler in the optical goods industry (DOT 713.687-018, sedentary, unskilled, SVP-2, 117,970 jobs in the national economy and 590 jobs in Louisiana); a lens block gauger (DOT 716.687-030, sedentary, unskilled, SVP-2, 23,796 jobs in the

national economy and 447 jobs in Louisiana); or a stone setter in the jewelry industry (DOT 735.698-034, sedentary, unskilled, SVP-2, 18,329 jobs in the national economy and 610 jobs in Louisiana).   ECF NO. 7-1 at 78-79.

The ALJ posed a third hypothetical involving the same person with the added exception that he would need to use a one-handed assistive device for ambulation. ECF No. 7-1 at 79.  The VE testified that such an individual would not be able to do any of the light work jobs.   ECF NO. 7-1 at 79.  The VE testified that the individual would still be able to do the sedentary jobs.  ECF No. 7-1 at 79-80.

The ALJ posed a fourth hypothetical involving the same individual with the additional exception of needing to take 2 unscheduled breaks in an 8 hour period, or would be unpredictably absent two or more days per month.  ECF No. 7-1 at 80. The VE testified there are not jobs that such an individual would be able to perform.

Moreover, if the individual has difficulty using either hand on an occasional basis for fine or gross manipulation and could not lift or carry even 10 pounds, such a person would not be able to perform sedentary work.  ECF NO. 701 at 80.  The VE explained the sedentary jobs required frequent gross manipulation and handling because they are primarily production jobs.   ECF No. 701 at 81.

Frick's sister, Justina Frick Posey ("Posey") also testified at the hearing. ECF No. 7-1 at 82.  Posey testified that Frick had previously lived in Alabama with their father.  ECF No. 7-1 at 83.  While Frick was living in Alabama, Posey noticed

that his speech, over the phone, was not right.  ECF No. 7-1 at 83.  Posey's father told her he had tried to get medical care for Frick, but there was not any available without insurance.  ECF No. 7-1 at 83.  So Frick moved to Louisiana for medical care.  ECF No. 7-1 at 83.  Frick had lived with Posey for about 1 year.  ECF No. 7-1 at 83.

When Frick moved in with Posey, she noticed his slurred speech, weight loss, and impaired ability to walk.  ECF No. 7-1 at 84.  Dr. Antezana confirmed the diagnosis of MS.  ECF No. 7-1 at 84.  Frick has an MRI every three months to see if the lesions on his brain are getting worse.  ECF No. 7-1 at 84.

Posey testified that Frick uses his cane at all times to ambulate, he falls sometimes, he has problems using his hands to hold a coffee cup or utensils when eating.  ECF No. 7-1 at 85.  Frick gets up in the morning, drinks coffee, watches TV, and sometimes tries to draw.  ECF No. 7-1 at 85.  If Frick starts to have too much pain, he lays down on his bed.  ECF NO. 7-1 at 85.  Posey testified that Frick falls asleep two to four times during the day.  ECF No. 7-1 at 85.

### C.   ALJ's and Appeals Council's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Frick: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work

he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *See Greenspan*, 38 F.3d at 237.

In the case at bar, the ALJ found that Frick has not engaged in substantial gainful activity since April 8, 2016. ECF No. 7-1 at 22. The Appeals Council found that Frick has severe impairments of degenerative disc disease, residual effects of compression fracture at T12, and MS. ECF No. 7-1 at 9. The Appeals Council also found that Frick is unable to perform his past relevant work as a merchandise delivery person and an industrial cleaner. ECF No. 7-1 at 11.

At Step No. 5 of the sequential process, the Appeals Council concluded that Frick has the residual functional capacity to perform sedentary work except the work must allow for: only occasional pushing and pulling of foot and hand controls

bilaterally; only occasional balancing and stooping; no kneeling, crawling, or crouching; communicating only simple information orally; no work at unprotected heights or around moving mechanical parts; no operation of a motor vehicle; and the use of a one-handed assistive device for ambulation. ECF No. 7-1 at 12.

The Appeals Council found that Frick was a younger individual with a high school education. ECF No. 7-1 at 11. The Appeals Council found there were a significant number of jobs in the national economy that Frick could perform, such as lens block gauger, and stone setter. ECF No. 7-1 at 11.

The Appeals Council concluded Frick was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on April 8, 2016. ECF No. 7-1 at 11.

## II.  Law and Analysis.

### A.  Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple

search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.    The ALJ/Appeals Council did not err in concluding that Frick's mental impairments are not severe.**

On appeal, Frick contends the ALJ erred in finding that Frick's mental impairment was not severe.

The Appeals Council adopted the ALJ's finding that Frick's mental impairment is not severe. ECF No. 7-1 at 9.[6]   The Appeals Council found that Frick's mental impairment does not cause more than a minimal limitation in his ability to perform basic mental work activities and are, therefore, non-severe. ECF No. 7-1 at 9. The Appeals Council adopted the ALJ's conclusions regarding the degree to which Frick's mental impairment restricts his mental abilities, and found Frick has: mild limitations in remembering, understanding, or applying information; no limitation in interacting with others, mild limitations in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing himself. ECF No. 7-1 at 9.

Frick argues that Dr. Bentley diagnosed him with major depressive disorder, moderate to severe (an affective disorder), resulting in marked limitations in his ability to sustain complex or repetitive work-related activities. However, Dr. Bentley found that Frick had a marked limitation only in his ability to "sustain complex or repetitive work." ECF No. 7-1 at 23. Dr. Bentley also found that Frick

---

[6] The ALJ found that Frick has "substance abuse disorder," but no psychologist, psychiatrist, or social worker diagnosed him with that. Instead, Frick was diagnosed with "cannabis use, unspecified, uncomplicated, F12.90 (ICD-10)." "Cannabis use disorder" is a different diagnosis, with a different diagnostic code in the DSM-V, and is a form of addictive use. Therefore, it was error to find Frick has "substance abuse disorder." However, that error does not change the outcome in this case.

The ALJ also erred in stating that Frick "bought prescription medication, Adderall, off the streets." ECF No. 7-1 at 22. Frick consistently stated that he used to buy and use Adderall years ago, when he was in college. ECF No. 7-1 at 365, 374, 385. Moreover, no drugs other than marijuana showed up in Frick's drug tests of record.

25

was only mildly impaired for simple tasks and in his ability to communicate effectively with coworkers and supervisors. ECF No. 7-1 at 353. The ALJ found, in accordance with 20 C.F.R. § 404.1520(c),[7] that Frick's "medically determinable mental impairment of affective disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is there non-severe." ECF No. 7-1 at 23. Therefore, Dr. Bentley's opinion does not support Frick's argument that he cannot perform any work due to a mental impairment.

It is noted that Frick did not seek or receive any mental health treatment before 2017, yet he worked until April 2016, when he stopped working because of his physical impairments. ECF No. 7-1 at 59-60. Therefore, there is no evidence to support Frick's claim that his mental impairments impaired his ability to work at that time.

Frick submitted additional mental health records, from Caring Choices in 2017, to the Appeals Council. Frick contends those records support his claim of a severe mental impairment and that the Appeals Council erred in not including those records in the administrative record as an exhibit and considering them in making its decision.

---

[7] "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c).

26

"[T]he Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision", if "there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  The claimant must also "show good cause" for not submitting the evidence to the ALJ as described in § 404.935.  20 C.F.R. § 404.970(b).  The Appeals Council declined to accept Frick's additional 2017 mental health records because there was no reasonable probability they would change the outcome of the decision.  ECF No. 7-1 at 8.

The Appeals Council did not discuss the new evidence from Caring Choices that Frick submitted, other than to explain why it was not included in the record.[8] However, Frick submitted other new evidence that the Appeals Counsel clearly reviewed and included in the administrative record.  ECF No. 7-1 at 8.  It would be unreasonable to infer that that Appeals Council reviewed some but not all of the new evidence submitted by Frick.

Frick did not attach the new mental health records from Caring Choices to his brief, but summarized them as follows: in October 2017, Frick was diagnosed with recurrent, severe, major depressive disorder with psychotic symptoms, as well as symptoms of a mental/emotional disorder that interferes with day-to-day functioning and adversely affects his relationships; later in October 2017 Frick was

---

[8] "The regulations do not require the [Appeals Council] to provide a discussion of the newly submitted evidence or give reasons for denying review."  *Nejmeh v. Colvin*, 2016 WL 642518, at *2 (N.D. Tex. 2016) (citing *Sun v. Colvin*, 793 F.3d 502, 512 (5th Cir. 2015)).

diagnosed with psychosis NOS; and in November 2017, Frick was diagnosed with recurrent, severe major depressive disorder with psychotic features.  ECF No. 8 at 3.  Frick contends this evidence contravenes the ALJ's finding that Frick's mental impairments were not severe.

Frick's new evidence does not undermine Dr. Estock's and Dr. Bentley's determinations that, although Frick's mental impairments caused moderate limitations in some areas and a marked limitation in his ability to sustain complex or repetitive work-related activities, they did not prevent him from performing basic work activities.[9]  Therefore, the new evidence did not contravene the ALJ's and Appeals Council's finding that Frick's mental impairment was non-severe, and the Appeals Council did not err in concluding the new evidence probably would not change the decision.

Substantial evidence supports the Appeals Council's finding that Frick's mental impairment is not severe.

C. **The Appeals Council found work that exists in significant numbers that Frick could do.**

Finally, Frick contends the Appeals Council erred in finding the jobs of lens block gauger (24,796 jobs nationally and 447 jobs in Louisiana) and stone setter (18,326 jobs nationally and 607 jobs in Louisiana) exist in significant numbers.

---

[9] No other mental health provider made a mental functional capacity assessment of Frick.

The Social Security Act, 42 U.S.C. §423(d)(2)(A) provides that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several other regions of the country. It does not matter whether: (1) work exists in the immediate area in which you live; (2) a specific job vacancy exists for you; or (3) you would be hired if you applied for work." *See also Pollice v. Secretary of Health and Human Services*, 843 F.2d 1392 (6th Cir. 1988) (the term "region" is flexible and the Commissioner may consider the number of jobs existing in the entire State).

Section 404.1566(b) further states: "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'"

In *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), the United States Eighth Circuit Court of Appeals found that 500 jobs regionally is a significant number. In *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979), the United States Fourth Circuit Court of Appeals found that 110 jobs is "not an insignificant number." *See also Denais v. Secretary of Health and Human Services*, 820 F. Supp. 278, 283 (W.D. La. 1993) (citing *Jenkins*, 861 F.2d at 1087, and noting that 500 jobs

29

is a significant number).  Accordingly, 447 jobs and 607 jobs existing in Louisiana are significant numbers.

Because the jobs cited by the Appeals Council exist in significant numbers in Louisiana, substantial evidence supports the finding of the Appeals Council that work exists that Frick can perform.

## III.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that Frick's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings

or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____3rd_____ day of February 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge